O’Neall, J.,
dissenting.
I cannot concur in the conclusion of a majority of the Court of Errors, and will briefly state my reasons for a different conclusion. The decree of the Chancellor, on Circuit, has fixed upon the defendant the facts of the abuse of the complainant amounting to scevitia, and he has declared if he had the power, he would not allow Mm, the defendant, any share or participation in the complainant’s separate estate. I do not use the Chancellor’s precise words, but the substance of his opinion.
This conclusion of the Chancellor, who heard the case below, does not certainly entitle the defendant to any consideration beyond his exact legal rights.
The question for the Court of Errors is, ought the deed of 13th of September, 1850, revoking the uses of the deeds of 27th March and 9th of July, 1849, to be set aside ? The deed of the 27th of March, was executed in conformity to the order *567 of tbe Court of Equity, and tbat of tbe 9tb of July by ber father. Hex subsequent revocation of tbeir uses was without consulting ber trustee: but she bad tbe power so to act by tbe express terms of tbe deed of settlement of March, 1849. Was tbe deed of September, 1850, ber own free and voluntary act ?
If so, it must prevail, otherwise it ought not. Tbe revocation is in favor of tbe husband. I think every deed or other conveyance to him by bis wife, is legally regarded as procured by bis force and influence: and to free them of tbat, be must show, tbat they were the free and voluntary act of tbe wife. In Calhoun v. Calhoun, Rich. Eq. Cases, decided in 1831, when I was a great deal more familiar with tbe administration of Equity than I ain now, with tbe assent of my brethren, Judges Johnson and Harper, I stated what I conceive is still tbe true principle regulating a disposition of tbe separate estate of tbe wife. “I understand there was no legal duress. This was, however, not necessary to be shown to avoid her acts. In law, she is always, in tbe presence of ber husband, supposed to act by his compulsion, and ber act is therefore considered as his. It was for those undertaking to sustain the sale, to show it to be the result of her own will. If it arose from the persuasion of tbe husband, who has been pronounced by tbe Chancellor, to be of that class, ‘who are described as worse than an heathen,’ it was bis sale and not hers.” Tbat sale was to a stranger, — much more what was required there, must be held to apply against tbe husband.
If tbe revocation bad been in favor of ber brother, tbe trustee, John C. Singleton,' could it have prevailed, unless tbe utmost fairness bad been shown ? Clearly it would not. In what different position does tbe defendant stand? It seems to me there is nothing to bis advantage to be found in it. He is supposed to be legally in tbe exercise of more irresistible power and control than tbe trustee. Prima facie, then tbe deed cannot prevail. This prima facie conclusion *568 must be removed by showing, that it was tbe result of tbe 'wife’s own will.
Tbe will of a married woman operating as an appointment under a power, or of ber personal estate by tbe consent of ber husband, may be good, provided, in this last case, it be not to himself. Ward v. Glenn, 9 Bich. 127; Hood v. Archer, 1 McO. 147. In .all tbe cases of tbe execution of wills under a power by a feme covert, it must be shown to be free and voluntary.
In Grigby v. Oox, 1 [Ves. Sen., 517, Lord Hardwicke although affirming tbe sale made of tbe wife’s separate estate by herself, according to an arrangement of tbe husband, yet takes occasion to say, very properly: “ And this will bold, though tbe act done by tbe wife, is in some degree a transaction alone with tbe husband: although in that case a Court of Equity will have more jealousy over it; and therefore if there is any proof,\ that tbe husband bad any improper influence over tbe wife in it by ill, or even extraordinary good usage, to induce her to it, tbe Court might set it aside.”
Tbe whole question is, according to these principles, resolvable by tbe facts.
Tbe bill charges, that the'deed was executed at tbe earnest request of tbe defendant and to remove causes of irritation, imaginary or real, to which be bad given way. Tbe words of tbe bill are, that "the defendant became so irritable' and unamiable,” at tbe terms of tbe settlement, that she, at his earnest solicitation, was induced to revoke tbe uses.
This statement is substantially admitted by tbe answer. It' is true, reasons which tbe defendant supposes justified bis course, are given. But that does not help tbe facts, that be procured tbe deed of revocation to be executed, and that it was executed in bis presence, and is to be considered as an act done by bis compulsion. It is not the result of her free will.
But it is supposed, that other acts of tbe wife show, that it *569 was ber free will offering to ber bbsband. T confess I have been unable to find anything of the kind in .the case. The deed changing the trustee and appointing another, can have no such effect. It too was executed in the presence of the husband, — and as alleged in the bill was a further offering to the defendant to obtain peace.
The settlement of the “ True Blue ” plantation and slaves, made by the Court of Equity, July, 1853, cannot have any effect on the previous deed. The Court made no inquiry, as to the means of the defendant; the parties made their own proposals; no reference was made to “The Ruins.” .The testimony of Mr. Shand shows, that those proposals so far as the complainant was concerned, were .another offering to obtain peace. The answer of the complainant ■ to the bill relating to the “ True Blue” estate, which she expresses great confidence in the defendant, ought not surely to have any effect against her, when that confidence was so outrageously abused in the January following.
The sad events of January, 1854, have separated forever, these unfortunate people, and I think the defendant has been so much 'to blame, has pursued such a course of outrage towards the complainant, that no inference in his favor ought to be made from the matters to which I have alluded. He has no claim to the bounty of his wife ; he ought not to live upon it. ' I think the deed of September, 1850, revoking the uses of the deeds of March and July, 1849, ought to be set aside.
Dunkin, Oh., and Whither, J., concurred.
The opinion of the Court of Appeals in Equity, upon the questions not referred to the Court of Errors, was then delivered by
Wardlaw, Oh.
The Circuit decree in this case vindicates itself by its own reasoning and we add some observations in *570 deference only to tlie earnestness and ability, with wbicb tbe appeal bas been prosecuted. First, as to the change of name prayed by the plaintiff. We suppose that under the general terms of the Act of 1814, (5 Stat. 718,) authorizing “any person who may be desirous of changing his or her name for that of another,” to exhibit his or her petition to the Court, “setting forth the reasons” for the application, that a wife against the opposition of her husband, is entitled to exhibit such petition; but the Act declares it to be “the duty of the Judge to determine and grant or not grant the prayer thereof, as to him shall appear proper, having a true regard to the true interest of the petitioner.” If an estate were left to a wife on condition of her assuming some other name, the Court might well order the change, notwithstanding the capricious obstinacy of the husband, but in general, wives have surnames by courtesy only, adopted from their husbands, and it is inconvenient that they should have appellations different from husbands. We are satisfied that the Chancellor exercised judiciously, the large discretion entrusted to him by the Act, and promoted “the true interest of the petitioner,” in rejecting an application which would seem to close the door to reconciliation with her husband.
Next as to alimony. The bill is not framed with reference to alimony; for although it contains allegations of cruelty on the part of the husband, one of the facts looking to alimony, it concedes that the wife has competent .means of maintenance, and that the husband has no separate estate needed for her support. If however, the bill had expressly prayed for alimony, our opinion would have been against the claim of plaintiff. Alimony means an allowance from the husband’s estate for the maintenance of the wife during separation, and is never given where she has sufficient means of subsistence in comfort. Without elaborating the point, I refer to Bishop on Mar. and Div., Sec. 549 and the note, and to Sec. 562, as fully sustaining this doctrine. Here, confessedly the wife is *571 ricb and tbe husband poor; and whatever may have been his • misconduct in conjugal relations, we do not perceive the propriety of unnecessarily impoverishing him. Ooster vs. Coster, 9 Sim. 597; Green vs. Ottie, 1 Swin. & Stu¡ 250.
Then as to the conclusiveness of the decree of November, 1853, we.are satisfied with the reasoning of the circuit decree, and only add some authorities; Muse vs. JEdgerton, Dud. Eq. 179.
On the point of protecting the wife in living apart from her husband, it is sufficient to refer to Taylor vs. Taylor, 4 Des. 174 and Threewitt vs. Threemtt, 4 Des. 574.
The questions as to “ The Bums ” estate have been determined by the Court of Errors, conformably to the decree. It is ordered and decreed that the Circuit decree be affirmed and the appeal be dismissed.
JOHNSTON, DuNKiN and DakgAN, O.O., concurred.

Appeal dismissed.